UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TING YAO LIN, FANG LIN, SHENG LAN LI, MU          :
LE XIE, TING JIA XIE, XIU YONG XIE,
                                                  :
                    Plaintiffs,                          08 Civ. 6071 (SAS) (AJP)
                                                  :
             -against-                                 **REPORT AND RECOMMENDATION**
                                                  :
HAYASHI YA II, INC. d/b/a HAYASHI YA,
HAYASHI YA OF 9 AVENUE, LLC d/b/a                  :
HAYASHI YA, FENG LIN, YANG QING,
                                                  :
                    Defendants.
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Shira A. Scheindlin, United States District Judge:**


On September 11, 2008, Judge Scheindlin entered a default judgment for plaintiffs

against all defendants: Hayashi Ya II, Inc., Hayashi Ya of 9 Avenue, LLC., Feng Lin and Yang Qing,

and referred the case to me for an inquest as to damages.  (Dkt. No. 19: 9/11/08 Default Judgment;

see also Dkt. No. 18: Order of Reference.)

For the reasons discussed below, the Court should enter judgment for plaintiffs

against the defendants, jointly and severally, for damages (including prejudgment interest) of

$364,259, attorneys' fees of $16,400 and costs of $1,065.

**FACTS**

Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

The complaint (Dkt. No. 1) alleges as follows:

Defendants Hayashi Ya II, Inc. and Hayashi 9 Avenue, LLC are New York corporations that did business as "Hayashi Ya," a sushi restaurant located at 857 Ninth Avenue in Manhattan.  (Compl. ¶¶ 13-14.)  Defendants Yang Qing and Feng Lin owned and operated Hayashi Ya, they "participated in the managment" of Hayashi Ya and "had the power to hire and fire Hayashi Ya employees, to establish wages, to set work schedules, and to maintain employment records." (Compl. ¶¶ 15-18; see also pages 20-21 below.)

Until plaintiffs were fired in January 2008, Hayashi Ya employed the six plaintiffs, as follows: (1) Ting Yao Lin as a delivery worker from January 2006 (Compl. ¶ 7); (2) Fang Lin as a sushi chef from June 2004 (Compl. ¶ 8); (3) Xie Xin Yong as a delivery coordinator from January 2006 (Compl. ¶ 9); (4) Mu Lei Xie as a delivery worker from 2007 (Compl. ¶ 10); (5) Tin Jia Xie as a delivery worker from November 2003 (Compl. ¶ 11); and (6) Sheng Lan Li as a waitress and cashier from November 2005 (Compl. ¶ 12).

All plaintiffs "regularly worked in excess of forty hours per week," and their shifts "regularly spanned more than ten hours per day, six days per week, and frequently spanned more than twelve hours per day." (Compl. ¶¶ 31-33.) Defendants did not pay plaintiffs spread-of-hours wages for each day that plaintiffs' shifts lasted more than ten hours per day. (Compl. ¶ 34.) Defendants did not inform plaintiffs of the Fair Labor Standards Act ("FLSA") wage provisions and failed to display, "in a place accessible to employees and in a visually conspicuous manner," the FLSA and New York Labor Law required notices of employees' right to receive minimum wage and overtime. (Compl. ¶¶ 40-41.) Defendants failed to "keep full and accurate records of Plaintiffs' hours and wages." (Compl. ¶ 42.)

Plaintiffs Ting Yao Lin, Mu Lei Xie and Tin Jia Xie (collectively "the delivery plaintiffs") "received monthly salaries from Defendants that averaged as low as approximately $3.08 per hour" and were "below the statutory minimums required by the FLSA" and/or the New York Labor Law. (Compl. ¶¶ 27-28.) Defendants required the delivery plaintiffs to purchase and maintain the bicycles used to make deliveries. (Compl. ¶ 35.) Defendants did not reimburse the delivery plaintiffs for bicycle related expenses. (Compl. ¶ 36.)

Prior to January 2007, defendants kept all the tips that customers left for plaintiffs Fang Lin and Sheng Lan Li. (Compl. ¶ 29.) Beginning in January 2007, defendants allowed plaintiffs Fang Lin and Sheng Lan Li to keep "part of the tips" that customers left. (Compl. ¶ 30.) Defendants required plaintiffs Fang Lin and Sheng Lan Li to pay for the maintenance of clothing with the Hayashi Ya logo that defendants required them to wear while working. (Compl. ¶¶ 38, 39.)

Defendants failed to inform plaintiffs of the provisions of 29 U.S.C. § 203(m) for how wages should be paid for tipped employees and failed to display a copy of New York Labor Law §§ 193 and 196-d, which prohibit illegal wage deductions and employers' demand of employee tips. (Compl. ¶¶ 40-41.)

In December 2007, "[p]laintiffs complained to [d]efendants about, among other things, the failure to pay overtime for hours worked over forty per week." (Compl. ¶ 43.) In January 2008, "[d]efendants terminated Plaintiffs' employment in retaliation." (Compl. ¶ 44.)

The complaint asserts causes of action under the FLSA and New York Labor Law for defendants' failure to pay: the delivery plaintiffs the "applicable minimum hourly wage" (Compl. ¶¶ 47-50, 54-56), and all plaintiffs time and a half for overtime (Compl. ¶¶ 51-53, 57-59). The complaint also asserted causes of action under only the New York Labor Law for defendants': unlawful retention of Fang Lin's and Sheng Lan Li's tips (Compl. ¶¶ 60-62); failure to pay all plaintiffs "spread-of-hours wages of an additional hour of pay at the minimum wage for each day Plaintiffs had a spread of hours in excess of ten hours per day" (Compl. ¶¶ 63-65); requiring the delivery plaintiffs to purchase and maintain bicycles and requiring plaintiffs Fang Lin and Sheng Lan Li to maintain work uniforms (Compl. ¶¶ 66-69); and "willful[] terminat[ion] [of] Plaintiffs in retaliation for complaining about unlawful labor and employment practices, including but not limited to the failure to pay overtime" (Compl. ¶¶ 70-73). The complaint seeks, inter alia, (i) unpaid minimum wage and overtime pay, pursuant to the FLSA and New York Labor Law; (ii) spread-of-hours wages pursuant to the New York Labor Law; (iii) compensation for unlawfully retained tips and unauthorized deductions pursuant to the New York Labor Law; (iv) liquidated damages pursuant

to 29 U.S.C. § 216(b) and N.Y. Labor Law §§ 198(1-a) & 663(1); (v) punitive damages for defendants' "illegal retaliation against Plaintiffs for engaging in protected acitvities" purusant to the New York Labor Law; (vi) pre-judgment interest; and (vii) attorneys' fees and costs. (Compl. at page 12.)

## EVIDENCE ON THE INQUEST AND ANALYSIS

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

### Minimum Wage, Overtime and Spread of Hours

The Court has reviewed plaintiffs' affidavits (Dkt. No. 24: Fang Lin Aff.; Dkt. No. 26: Mu Lei Xie Aff.; Dkt. No. 27: Sheng Lan Li Aff.; Dkt. No. 28: Ting Jia Xie Aff.; Dkt. No. 29: Ting Yao Lin Aff.; Dkt. No. 30: Xiu Yong Xie Aff.) and plaintiffs' counsels' affidavits, charts and summaries (Dkt. No. 23: Colodny Aff. & Exs. 1-7; Dkt. No. 25: Holt Aff. & Ex. 1; Dkt. No. 22: Dunn 9/24/08 Aff. & Exs. 2-3). The Court also reviewed defendant Yang Qing's September 24, 2008 and November 16, 2008 letters to the Court and considered Yang Qing's and plaintiffs' testimony at the inquest hearing. (Dkt. No. 32: Yang Qing 9/24/08 Letter; Dkt. No. 35: Yang Qing 11/16/08 Letter; Dkt. No. 38: 11/14/08 Hearing Transcript ("H.").)

Plaintiffs' affidavits describe:  the plaintiffs' job positions at Hayashi Ya; the time period during which plaintiffs worked for defendants; plaintiffs' normal work schedule; plaintiffs' rate of pay or wage calculations; the amount and percentage of tips received; defendants' failure to explain how tips may affect minimum wage; defendants' failure to reimburse business expenses; defendants' failure to provide plaintiffs with pay stubs or wage statements; and defendants' retaliatory firing of plaintiffs after plaintiffs complained about the hours and pay.  (See generally Dkt. Nos. 24, 26-30: Plfs. Affs.)

"Plaintiffs rely on their recollections to reconstruct the hours that they worked and the money that they were paid.  The Defendants did not maintain records of the hours of Plaintiffs' employment nor accurate records of the wages that Plaintiffs received."  (Dkt. No. 21: Plfs. Inquest Br. at 13.)  Defendants were served with plaintiffs' inquest papers.  The corporate defendants and defendant Feng Lin did not respond at all; defendant Yang Qing's response was limited to arguing that plaintiffs did not work for her or her company before 2007 (see page 21 below).  Thus, plaintiffs' testimony as to the hours they worked, their rate of pay, withholding of tips and rquirement that they pay certain expenses were unrebutted.

In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.  See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of

that work by just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.");  <u>Grochowski</u> v. <u>Phoenix Constr.</u>, 318 F.3d 80, 87-88 (2d Cir. 2003); <u>Harold Levinson Assocs., Inc.</u> v. <u>Chao</u>, 37 Fed. Appx. 19, 20 (2d Cir. 2002), <u>cert. denied</u>, 546 U.S. 933, 126 S. Ct. 415 (2005); <u>Tran</u> v. <u>Alphonse Hotel Corp.</u>, 281 F.3d 23, 31 (2d Cir. 2002); <u>Reich</u> v. <u>Southern New Eng. Telecomms. Corp.</u>, 121 F.3d 58, 66 (2d Cir. 1997); <u>Liu</u> v. <u>Jen Chu Fashion Corp.</u>, 00 Civ. 4221, 2004 WL 33412 at *3 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.).[1/]  The Court accepts plaintiffs' estimates of hours worked.

Consistent with the approach approved by this Court in <u>Liu</u> v. <u>Jen Chu Fashion Corp.</u>, 2004 WL 33412 at *3-6, plaintiffs' counsel Mr. Colodny described the methodology employed to determine minimum wage, overtime and spread of hours pay for plaintiffs, as follows:

---

[1/]    <u>See also</u>, <u>e.g.</u>, <u>Rivera</u> v. <u>Ndola Pharmacy Corp.</u>, 497 F. Supp. 2d 381, 388-89 (E.D.N.Y. 2007); <u>Chan</u> v. <u>Sung Yue Tung Corp.</u>, 03 Civ. 6048, 2007 WL 313483 at *23-24 (S.D.N.Y. Feb. 1, 2007); <u>Doo Nam Yang</u> v. <u>ACBL Corp.</u>, 427 F. Supp. 2d 327, 332-33 (S.D.N.Y. 2005); <u>Mascol</u> v. <u>E & L Transp. Inc.</u> , 387 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2005); <u>Moon</u> v. <u>Kwon</u>, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002); <u>Chao</u> v. <u>Vidtape, Inc.</u>, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002), <u>aff'd as modified on other grounds</u>, 66 Fed. Appx. 261 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1047, 124 S. Ct. 807 (2003); <u>Cao</u> v. <u>Chandara Corp.</u>, 00 Civ. 8057, 2001 WL 34366628 at *4-5 (S.D.N.Y. July 25, 2001); <u>Chen</u> v. <u>Jenna Lane, Inc.</u>, 30 F. Supp. 2d 622, 624-25 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

Minimum Wage

 . . . .

7.      For each Plaintiff, the calculations determine the minimum wage damages by comparing the actual hourly wage that each Plaintiff was paid with the legal minimum wage during each period of work.  Because the Defendants paid the Plaintiffs a monthly salary rather than an hourly wage, the calculations convert the monthly salary into an equivalent hourly wage by first converting the monthly salary into a weekly salary and then dividing the weekly salary by the number of hours worked per week.

8.      The applicable minimum wage under the Fair Labor Standard Act was $5.15 per hour for work performed between January 1, 2006 and July 23, 2007, and $5.85 per hour for work performed between July 24, 2007 and the end of Plaintiffs' employment in January 2008.[2]

9.      Column J sets forth the difference between the applicable FLSA minimum wage and the hourly wage paid, multiplied by the number of hours and weeks in each relevant work period.

 . . . .

Overtime

15.     The Defendants should have paid Plaintiffs one and a half times their regular rate of pay, or one and a half times the minimum wage if the regular rate fell below the minimum wage, for all hours worked exceeding forty hours in a workweek.  29 U.S.C. § 207.

16.     Because the Plaintiffs received a salary intended to compensate them for all hours worked at a straight-time rate, but did not include an overtime premium for their overtime hours, the Plaintiffs' overtime calculations seek only the half-time differential for each overtime hour rather than time-and-a-half for each such hour.

---

[2]      Plaintiffs noted in their inquest brief that "Plaintiffs' damage claims under the FLSA go back for three years [from July 2, 2008 when plantiffs filed their complaint], to July 2, 2005, because there have been willful violations of the law.  29 U.S.C. § 255(a); Compl. ¶ 45." (Dkt. No. 21: Plfs. Inquest Br. at 7-8.)

17.     To determine the amount of overtime that Defendants should have paid to the Plaintiffs, I converted the monthly salary into an equivalent hourly wage. When the hourly wage . . . fell below the legal minimum wage . . . , the half-time differential was based on the legal minimum wage. When the hourly wage . . . exceeded the minimum wage, the half-time differential rate was based on the actual hourly rate. . . .

18.     The amount of overtime owed for each period of work is . . . . the appropriate half-time differential rate multiplied by the number of overtime hours per week and the number of weeks worked.

. . . .

Spread of Hours

. . . .

23.     Plaintiffs seek an extra hour of pay at the applicable minimum wage under the New York Labor Law for each day they work a "spread of hours" exceeding ten hours. 12  N.Y.C.C.R.R. § 137-1.7.

24.     The minimum wage under the New York Labor Law was $6.75 per hour for work performed during the calendar year 2006, and $7.15 per hour for work performed between January 1, 2007 and the end of Plaintiffs' employment in January 2008. N.Y. Labor Law § 652; 12 N.Y.C.C.R.R. § 137-1.2. The minimum wage due pursuant to the spread of hours provisions is the full minimum wage before any allowances for tips or meals. See 12 N.Y.C.C.R.R. § 137-1.7 (the applicable rate is the "basic minimum hourly wage rate before allowances").

25.     As set forth in the Plaintiffs' declarations, Plaintiffs' regular daily shift contained a spread of hours exceeding ten. Thus, the Plaintiffs seek an hour of pay at the applicable New York State minimum wage for each day of work performed.

26.     To calculate the amount of spread of hours payments owed to the Plaintiffs, I multiplied the number of weeks worked per period by the number of days worked each week by the applicable minimum wage.

(Dkt. No. 23: Colodny Aff. ¶¶ 7-9, 15-18, 23-26, citations to chart columns omitted.)

As noted, the above methodology was approved by this Court previously in <u>Liu</u> v. <u>Jen Chu</u>, 2004 WL 33412 at *3-5, and <u>Chen</u> v. <u>Jenna Lane, Inc.</u>, 30 F. Supp. 2d at 625, and the Court again approves it here.  The Court has reviewed the affidavits and the charts derived therefrom (Colodny Aff. Exs. 2-4) and has "spot checked" the arithmetic calculations in the charts.

**Tips**

This Court also approves of plaintiffs' request, pursuant to New York Labor Law, for payment for unlawful retention of tips.  (Dkt. No. 21: Plfs. Inquest Br. at 10.)  According to New York Labor Law, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. Labor Law § 196-d.  Thus, the plaintiffs whose tips were retained by defendants are entitled to the amount of the lost tips.  <u>See</u>, <u>e.g.</u>,  <u>Chan</u> v. <u>Sung Yue Tung Corp.</u>, 03 Civ. 6048, 2007 WL 313483 at *20-21, 25 (S.D.N.Y. Feb. 1, 2007) (Under New York Labor Law, plaintiffs entitled to recover "the amount of tips that the defendants illegally retained for themselves."); <u>Chung</u> v. <u>New Silver Palace Rest. Inc.</u>, 246 F. Supp. 2d 220, 231 (S.D.N.Y. 2002); <u>Ayres</u> v. <u>127 Rest. Corp.</u>,12 F. Supp. 2d 305, 307-09 (S.D.N.Y. 1998).

Mr. Colodny calculated lost tips damages as follows:

42.     As set forth in Plaintiffs' declarations, Plaintiffs Sheng Lan Li and Fang Lin's tips were retained either in whole or in part by Defendants.

43.     Column G represents the approximate weekly tips that Defendants withheld from Plaintiffs.  These amounts were calculated by converting the approximate monthly tips that Defendants withheld into a weekly amount.

> 44.    To calculate the unlawfully retained tips damages owed for each relevant work period, I multiplied the weekly confiscated tips by the number of weeks worked.

(Dkt. No. 23: Colodny Aff. ¶¶ 42-44, citations to columns omitted.)   The Court approves of Mr. Colodny's methodology.

### **Bicycle and Uniform Expenses**

This Court also approves of plaintiffs' request for payment of the delivery plaintiffs' cost of buying and maintaining bicycles used to deliver food to Hayashi Ya customers.  Under New York Labor Law, "it shall be unlawful for any person . . . to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment."   N.Y. Labor Law § 198-b(2).   Furthermore, "[n]o employer shall make any deduction from the wages of an employee, except deductions which: (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; . . . ."  N.Y. Labor Law § 193(1)(a).  The regulations additionally provide that "[t]he minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer."  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5(b).   Since the delivery plaintiffs incurred expenses by buying and maintaining the bicycles, which were used to carry out delivery duties assigned by Hayashi Ya, the delivery plaintiffs are entitled to payment for such expenses.  See, e.g., Yu G. Ke v. Saigon Grill, Inc., 07 Civ.2329, 2008 WL 5337230 at *19,

– F. Supp. 2d. – (S.D.N.Y. Oct. 21, 2008) (allowing recovery of the cost of the purchase and repair of bicycles used to deliver take-out orders to restaurant defendant's customers); Trinidad v. Breakaway Courier Sys., Inc., 05 Civ. 4116, 2007 WL 103073 at *1, 6, 9 (S.D.N.Y. Jan. 12, 2007) (Rule 23 class certified based on allegations of deductions for bicycle repairs.); Hudacs v. Celebrity Limousine Serv. Corp., 205 A.D.2d 155, 156-58, 617 N.Y.S.2d 1006, 1007-09 (3d Dep't 1994) (Defendant liable for deducting the cost of uniforms from driver employees' paychecks.).

> Mr. Colodny described his methodology as follows:
>
> 33.    As set forth in Plaintiffs' declarations, the three delivery Plaintiffs had to purchase their own bicycles that cost approximately $400 each and had to pay $30-50 per month to maintain these bicycles.  The purchase cost of the bicycles . . . and the monthly maintenance is averaged out to $40 per month and converted to a weekly amount. . . .
>
> . . . .
>
> 35.    To calculate the required expenses owed for each relevant work period, I multiplied the weekly business expenses by the number of weeks worked; where there was a one-time expense . . . , I added this amount to the first relevant work period for that Plaintiff.

(Dkt. No. 23: Colodny Aff. ¶¶ 33, 35, citations to columns omitted.)  This Court approves of this methodology for determining such payment.

> With respect to Fang Lin's request for reimbursement for maintenance of his uniform,

New York law provides:

> No allowance for the supply, maintenance, or laundering of required uniforms shall be permitted as part of the minimum wage. Where an employee purchases a required uniform he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages. Where the employer fails to launder or

> maintain required uniforms for any employee, he shall pay such employee in addition
> to the minimum wage prescribed herein:  [specified amounts per week].

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.8.  Fang Lin spent approximately $5 per week

maintaining his uniform.  (Dkt. No. 24: Fang Lin Aff. ¶ 10; Dkt. No. 23: Colodny Aff. ¶ 34.)  For

2006 through June 30, 2007, Fang Lin was paid $6.41 per hour (Colodny Aff. Ex. 2), which is less

that the state minimum wage of $6.75 to $7.15 per hour (see Colodny Aff. Ex. 4), and thus Fang Lin

is entitled to be reimbursed for his uniform expense for those 18 months.  See, e.g., Chan v. Sung

Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *22 (S.D.N.Y. Feb. 1, 2007) ("Because, at all

relevant times, plaintiffs were paid wages of no more than the New York minimum wage with a tip

credit, their uniform expenses necessarily decreased their wages below minimum wage. . . .

Accordingly, plaintiffs are entitled to recover from defendants (1) the cost of those uniform items

for which they paid; [and] (2) the full statutory weekly uniform maintenance allowance for all weeks

that the defendants did not offer any laundry service . . .").

          For the second half of 2007, however, Fang Lin was paid $8.01 and then $8.97 per

hour (Colodny Aff. Ex. 2), which even after uniform expenses exceeded the state minimum wage

of $7.15 per hour (see Colodny Aff. Ex. 4).  Therefore, Fang Lin is not entitled to payment for

maintenance of his uniform during the second half of 2007, resulting in a reduction of his claim by

$175.  See, e.g., Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007)

(summary judgment for defendants on plaintiffs' claim for payment of cost of uniform maintenance

because "plaintiffs offered no proof that its employees' cleaning costs reduced their wages to below

minimum wage"); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048, 2006 WL 851749 at *22 n.39

(S.D.N.Y. Mar. 30, 2006) (Though plaintiffs claim "that defendants were required to pay for uniform-related costs regardless of the amount received in wages, they do not cite any authority for their argument. The law's plain language provides that employers who fail to maintain and launder employees' uniforms need only pay an additional amount above the 'minimum' wage to cover uniform-related costs. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.8.  If the employers already pay a sufficient amount for laundering as part of regular compensation, they have complied with § 137-1.8, even if they have not expressly declared that a certain portion of the wage represents reimbursement for uniform-related expenses."); Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998) ("Both New York law and federal law require employers to compensate employees for the purchase and maintenance of required uniforms if the employees' expenditures for these purposes would reduce their wages to below minimum wage.").

**Liquidated Damages**

On their  federal claims (minimum wage and overtime), plaintiffs request liquidated damages of 100%, which is in accordance with 29 U.S.C. § 216(b).  (See Dkt. No. 21: Plfs. Inquest Br. at 15; Dkt. No. 23: Colodny Aff. ¶¶ 11, 20-21.)  On their state law claims (spread-of-hours, unlawful retention of tips, and bicycle and uniform related costs), plaintiffs alleged that  defendants' violations were "willful" and thus request liquidated damages of 25% of actual damages, pursuant to New York Labor Law §§ 198(1-a), 663.  (Plfs. Inquest Br. at 15-16; Colodny Aff. ¶¶ 28, 37, 46.) This Court approves of these requests.  See, e.g., Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 264 (2d Cir. 1999) ("Under New York's Labor Law, when an employer willfully refuses to pay an

employee, 'the court shall allow such employee . . . an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.'"); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *4-5 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

**Prejudgment Interest**

Plaintiffs seek prejudgment interest on their state law claims pursuant to C.P.L.R. § 5001. (Dkt. No. 21: Plfs. Inquest Br. at 16.) The Second Circuit has held that even where a plaintiff is awarded liquidated damages under New York Labor Law, prejudgment interest still is appropriate. E.g., Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999), cert denied, 528 U.S. 1119, 120 S. Ct. 940 (2000).[3/] The statutory interest rate in New York is 9%. C.P.L.R. § 5004. Because the unpaid wages to each plaintiff occurred at different times, interest is to be calculated pursuant to C.P.L.R. § 5001(b) ("Where . . . damages were incurred at various times,

---

[3/]    See, e.g., Yu G. Ke v. Saigon Grill, Inc., 07 Civ. 2329, 2008 WL 5337230 at *15 (S.D.N.Y. Oct. 21, 2008) (A plaintiff awarded liquidated damages under New York Labor Law may also recover pre-judgment interest "'because [they] serve fundamentally different purposes.'") (quoting Reilly v. Natwest Mkts. Group Inc., 181 F.3d at 265); Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 1373118 at *9 (S.D.N.Y. May 8, 2007) ("[T]he Second Circuit has held that '[p]re-judgment interest and liquidated damages under the Labor Law are not functional equivalents,' because 'liquidated damages under the Labor Law constitute a penalty' to deter willful violations of the law.") (quoting Reilly v. Natwest Mkts. Group Inc., 181 F.3d at 265); Perero v. Food Jungle, Inc., Nos. 05-CV-4347, 05-CV-5169, 05-CV-5170, 2006 WL 2708055 at *8 (E.D.N.Y. Aug. 7, 2006) ("Even where a plaintiff is awarded liquidated damages under New York Labor Law, the Second Circuit has held that prejudgment interest may also be awarded."); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *5 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Moon v. Kwon, 99 Civ. 11810, 2003 U.S. Dist. LEXIS 22959 at *2 (S.D.N.Y. Oct. 30, 2002) (awarding liquidated damages and prejudgment interest for violations of FLSA and New York Labor Law).

interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."); see also, e.g., Reilly v. Natwest Mkts. Group Inc., 181 F.3d at 265.  Plaintiffs' counsel used the "midpoint of the accrual of damages" for each plaintiff to calculate interest.  (Dkt. No. 23: Colodny Aff. ¶¶ 30, 39, 48-49; Plfs. Inquest Br. at 16-18.)  This Court finds acceptable the methodology used by plaintiffs' counsel to compute interest.[4/]

**Punitive Damages for Retaliation**

Plaintiffs also request punitive damages for defendants' retaliation in violation of New York Labor Law §215.  (Dkt. No. 21: Plfs. Inquest Br. at 11-13.)  New York Labor Law § 215 states: "No employer or his agent, or the officer or agent of any corporation, shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, . . . ."  "In order to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result."  Higueros v. New York State Catholic Health Plan, Inc., 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (citing cases).  An informal complaint to an employer that the employer is violating a provision of the Labor Law suffices.  See Yu G. Ke v. Saigon Grill, Inc., 07 Civ. 2329, 2008 WL 5337230 at *17, – F. Supp. 2d

---

[4/]     This Court's calculation of plaintiffs' damages was lower than plaintiffs' calculations by less than one percent.  To offset the difference, this Court has not updated plaintiffs' prejudgment interest calculations to reflect the date of this Report and Recommendation's issuance, but instead used plaintiff's interest calculations as of the date plaintiffs filed their inquest papers (September 29, 2008).

– (S.D.N.Y. Oct. 21, 2008) (§ 215 "covers complaints by employees to their employer and not merely the institution of formal proceedings."); Barturen v. Wild Edibles, Inc., 07 Civ. 8127, 2007 WL 4468656 at *5 (S.D.N.Y. Dec. 18, 2007) ("An employer violates Labor Law § 215.1 by retaliating against an employee for making an informal complaint to the employer that the employer has violated any provision of the Labor Law. . . . The complaint alleges that [defendant] discharged [plaintiffs] in retaliation for making the informal complaint at the August 20, 2007 demonstration that [defendant] failed to pay them overtime wages. . . . It also alleges that [defendant] discharged those plaintiffs . . . 'with discriminatory intent and in retaliation for their complaint against Defendants' unlawful labor practices.' . . . Those allegations state claims for relief against violations of Labor Law § 215.1.") (citation omitted); Higueros v. New York State Catholic Health Plan, Inc., 526 F. Supp. 2d at 347-48 (denying defendant's motion to dismiss retaliation claim for "lack of sufficient specificity" where plaintiff alleged in the complaint that she repeatedly complained to supervisors about the nonpayment of overtime wages and that the defendant retaliated by terminating her.).[5/] Termination, of course, constitutes an "adverse employment action" under § 215. See, e.g., Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 712 n.6 (S.D.N.Y. 2007) (noting that "the majority of successful retaliation claims under N.Y. Labor Law § 215 are premised on employment termination"); Higueros v. New York State Catholic Health Plan, Inc., 526 F. Supp. 2d at 347; Perez

---

[5/]   But cf. Seever v. Carrols Corp., 528 F. Supp. 2d 159, 166 (W.D.N.Y. 2007) ("Because there is no evidence that any of the plaintiffs ever . . . complained that [defendant] was violating specific provisions of the New York Labor Law, plaintiffs' retaliation claims fail as a matter of law, and must be dismissed.").

v. Jasper Trading, Inc., No. 05-CV-1725, 2007 WL 4441062 at *3 (E.D.N.Y. Dec. 17, 2007)

("[T]ermination of employment clearly constitutes prohibited retaliation" under § 215.).

Here, plaintiffs' complaint alleges that in December 2007, plaintiffs "complained to

Defendants about, among other things, the failure to pay overtime for hours worked over forty per

week. . . . In January 2008, Defendants terminated Plaintiffs' employment in retaliation for the

complaints." (Dkt. No. 1: Compl. ¶¶ 43-44.)  Plaintiffs' affidavit testimony supports the complaint's

allegations.  (See Dkt. No. 24: Fang Lin Aff. ¶ 11; Dkt. No. 26: Mu Lei Xie Aff. ¶ 11; Dkt. No. 27:

Sheng Lan Li Aff. ¶ 8; Dkt. No. 28: Ting Jia Xie Aff. ¶ 11; Dkt. No. 29: Ting Yao Lin Aff. ¶ 11;

Dkt. No. 30: Xiu Yong Xie Aff. ¶ 8; see also Dkt. No. 21: Plfs. Inquest Br. at 11-12.)[6]  Plaintiffs

satisfy Labor Law § 215 because they alleged and presented evidence of:  (1) informal complaints,

(2) adverse employment action (termination), and (3) that their complaint resulted in the adverse

employment action.  Accordingly, plaintiffs are entitled to retaliation damages pursuant to New York

Labor Law § 215.

Plaintiffs request $5,000 in punitive damages for defendants' retaliation.  (Plfs.

Inquest Br. at 12-13.)  "Courts performing reviews of jury verdicts in discrimination and retaliation

cases have noted that with 'so-called "garden variety" mental anguish claims, . . . awards hover in

the range of $5,000 to $30,000.'"  Fowler v. New York Transit Auth., 96 Civ. 6796, 2001 WL 83228

at * 13 (S.D.N.Y. Jan. 31, 2001 ); Moore v. Freeman, 355 F.3d 558, 564 (6th Cir. 2004) (FLSA

retaliation case; jury's award of $40,000 to plaintiff for mental and emotional distress did not "'shock

---

[6]      Plaintiff Fang Lin does not allege that he suffered any emotional distress due to plaintiffs'
retaliation.  (See Fang Lin Aff. ¶¶ 11-12.)  Accordingly, this Court does not award him
damages for retaliation.

the judicial conscience'" where plaintiff testified that "the stress of losing his job demoralized him, strained his relationships with his wife and children, and negatively affected his sleeping habits and appetite."); see also Perez v. Jasper Trading, Inc., 2007 WL 4441062 at *9 (FLSA case; "The court has reviewed a number of employment related cases with evidence of emotional distress similar to that offered by the plaintiffs, and in those cases the awards usually range from $5,000 to $30,000").[7] Here, although plaintiffs only allege they were "upset" and "in low spirits" after being terminated, plaintiffs merely request the bottom of the range of awards for "garden-variety" emotional distress claims. (Mu Le Xie Aff. ¶ 12; Sheng Lan Li Aff. ¶ 9; Ting Jia Xie Aff. ¶ 12; Ting Yao Lin Aff. ¶ 12; Xiu Yong Xie Aff. ¶ 9.) Accordingly, this Court approves of these five plaintiffs' request for $5,000 each in punitive damages.

**Defendants' Joint and Several Liability**

        Plaintiffs request that defendants be held joint and severally liable. (Dkt. No. 21: Plfs. Inquest Br. at 18-19.) Because defendants defaulted, defendants cannot now challenge liability, and thus all defaulting defendants will be held jointly and severally liable. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158, 161 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability. . . . If we were to allow a defaulting party to contest liability and interpose general set-offs at the damages inquest,

---

[7]     "In those cases, the evidence of mental anguish suffered is generally limited to the testimony of the plaintiff, is described in vague or conclusory terms, without presenting evidence of the duration, severity or consequences of the condition, and there is minimal or no evidence of medical treatment." Fowler v. New York Transit Auth., 2001 WL 83228 at *13; see also Perez v. Jasper Trading, Inc., 2007 WL 4441062 at *9 ("The evidence [in emotional distress retaliation] cases usually consists of the plaintiff's own testimony describing the emotional distress, with little or no supporting medical evidence.").

we would eviscerate the rule governing defaults, and for all practical purposes deprive the district courts of this important case management tool."), cert. denied, 506 U.S. 1080, 113 S. Ct. 1049 (1993); Chaman LAL Setia Exports Ltd. v. Sawhney, 00 Civ. 2838, 2003 WL 21649652 at *4 (S.D.N.Y. May 28, 2003) ("defendants' joint and several liability is established by the allegations made in the complaint and [the District Judge's] granting of a default judgment.").

Only defendant Yang Qing has challenged this issue, claiming that she is not liable for the period prior to 2007 when she became the owner of Hayashi Ya of 9 Avenue LLC; Yang Qing asserts that her "company was open in 2007 and the plaintiffs are impossible to work in [her] company before 2007." (Dkt. No. 32: Yang Qing 9/24/08 Letter.) She further stated that "[i]n 2007, LIN, XING LI transferred this restaurant to [her] and [she] applied [her] company as HAYASHI YA OF 9 AVE LLC." (Dkt. No. 35: Yang Qing 11/16/08 Letter at 1.) Yang Qing maintained that she continued to employ the plaintiffs after Hayashi Ya was "transferred" to her because of their experience. (Id.)

At the inquest hearing, Yang Qing repeatedly stated that while plaintiffs worked for the restaurant in 2006, "[i]n the year 2006, it was not [her] restaurant. [She] didn't open it. [She] only took over in 2007." (H. 6-7, 8.) Yang Qing initially testified that she did not even go to the restaurant in 2006 (H. 9), but after further questioning she admitted that she worked in the restaurant in 2006, counting the money at the end of the night and answering the telephone (H. 19-20). The plaintiffs, however, testified at the hearing that Yang Qing in 2006 was their "boss," "supervising"

the restaurant, telling the workers what to do, paying them, and with the power to fire them.  (H. 23-24, 26-28.)

The Court found Yang Qing's testimony to be contradictory and not credible, and found plaintiffs' testimony as to Yang Qing's supervisory role in 2006 to be credible.  Accordingly, under the FLSA and New York Labor Law, as a supervisor, Yang Qing is liable as an "employer."  See, e.g., Boyke v. Superior Credit Corp., No. 01-CV-0290, 2006 WL 3833544 at *6 (N.D.N.Y. Dec. 28, 2006) ("To be liable under the FLSA, one must be an 'employer,' which the statute broadly defines as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' 29 U.S.C. § 203(d). The definition of 'employer' is similarly expansive under New York law, encompassing any 'person employing any [employee].' N.Y. Labor Law § 2(6). See also N.Y. Labor Law § 651(6). The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer. . . . The central inquiry in determining whether one qualifies as an 'employer' under these generous definitions is 'whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case.' Factors to consider when examining the 'economic reality' of a particular situation include '"whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records,"' though no single factor is dispositive.  Employer

status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees.") (citations omitted).[8]

**Total Damages Award to Plaintiffs**

Accordingly, plaintiffs are entitled to judgment against all defendants, jointly and severally, for the following damage amounts, including liquidated damages, punitive damages and interest:

| Plaintiff | Amount |
|---|---|
| Ting Yao Lin | $ 72,026 |
| Fang Lin | $74,640[9] |
| Sheng Lan Li | $81,096 |
| Mu Lei Xie | $30,225 |
| Ting Jia Xie | $62,737 |
| Xiu Yong Xie | $ 43,535 |
| Total | $364,259 |

(Dkt. No. 23: Colodny Aff. Ex. 1, plus $5,000 for each plaintiff except Fang Lin for punitive damages.)

---

[8]     See also, e.g., Zheng v. Liberty Apparel Co., 355 F.3d 61, 66-68 (2d Cir. 2003); Herman v. RSR Sec. Serv. Ltd., 172 F.3d 132, 139-40 (2d Cir. 1999); Yu G. Ke v. Saigon Grill, Inc., 07 Civ. 2329, 2008 WL 5337230 at *17-18, – F. Supp. 2d – (S.D.N.Y. Oct. 21, 2008); Jiao v. Shi Ya Chen, 03 Civ. 0165, 2007 WL 4944767 at *9-11 & nn.12-13 (S.D.N.Y. Mar. 30, 2007); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *12 (S.D.N.Y. Feb. 1, 2007).

[9]     This amount reflects the total amount plaintiffs calculated for Fang Lin ($79,815) minus the amount plaintiffs calculated for Fang Lin's uniform expenses for the second half of 2007 ($175) and minus the $5,000 punitive damages retaliation amount.

**Attorneys' Fees**

The FLSA and New York Labor Law provide for attorneys' fees and costs to a successful plaintiff. 29 U.S.C. § 216(b); N.Y. Labor Law § 198(1-a); see also, e.g., Barfield v. New York City Health & Hosp. Corp., 537 F.3d 132, 151 (2d Cir. 2008); Liu v. Jen Chu Fashion Corp., 00 Civ.4221, 2004 WL 33412 at *6 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

Plaintiffs request $16,400 in attorneys' fees and $1,065 ($350 filing fee and $715 for service of process) in costs. (See Dkt. No. 21: Plfs. Inquest Br. at 20-21.) This Court finds the hourly rate of $400 per hour for Mr. Colodny and $200 per hour for Mr. Holt and Mr. Dunn reasonable. The time spent is reasonable (indeed, defendants are benefitted because plaintiffs' request does not include time spent at the inquest hearing or for post-inquest briefing). Plaintiffs' costs also are reasonable. Accordingly, plaintiffs are entitled to attorneys' fees of $16,400 and costs of $1,065.

## CONCLUSION

For the reasons set forth above, the Court should enter judgment for plaintiffs against defendants, jointly and severally, for damages (including prejudgment interest) of $364,259, plus $16,400 in attorneys' fees and $1,065 in costs.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the

Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Shira A. Scheindlin, 500 Pearl Street, Room 1620, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

DATED:     New York, New York
           January 30, 2009

                                          Respectfully submitted,

                                          Andrew J. Peck
                                          United States Magistrate Judge

Copies to:    David A. Colodny, Esq.
              Robert L. Dunn, Esq.
              Hayashi Ya II, Inc. d/b/a Hayashi Ya
                  Hayashi Ya of 9 Avenue, LLC d/b/a Hayashi Ya
                  Feng Lin & Yang Qing
                  857 Ninth Avenue, New York, NY 10019
              Judge Shira Scheindlin

H:\OPIN\HAYASHI